UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DARRYL ROBERTS, | : | Case No. 3:10-cv-23 |
| Plaintiff, | : : | |
| | : | Judge Timothy S. Black |
| vs. | : : | |
| COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant. | : : | |

## ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 21) (ALJ's decision)).

### I.

On April 7, 2005, Plaintiff filed an application for DIB and SSI alleging a disability onset date of July 20, 2004, due to arthritis. Specifically, he testified that he could no longer work due to problems with his knees which would swell, lock-up, and give-out, and pain in his right ankle, lower back, and right shoulder. (Tr. 55-57, 67, 331-32).

Upon denial of his claims at the state agency levels, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 35-43, 333-40). A hearing was held on March 18, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 341-57). A vocational expert was also present and testified. (Tr. 353).

On August 20, 2008, the ALJ entered his decision finding Plaintiff not disabled because he could perform a significant number of sedentary jobs despite the limitations caused by his impairments. (Tr. 11-21). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 5-7, 29).

Plaintiff was 48 years old at the time of his hearing. (Tr. 21, 55). He completed high school and previously worked as an insulation installer, a brake drum operator, a fast food cook, and a dietary aide. (Tr. 21, 55, 353).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005.

2. The claimant has not engaged in substantial gainful activity since July 20, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: a rotator cuff tear of the right shoulder; internal derangement and osteoarthritis of both knees; mild osteoarthritis of the lumbar spine; the residuals of a right ankle fracture; depressive disorder; pain disorder; and a history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he is limited to jobs that would not involve working at unprotected heights. He should not be expected to perform work that involves overhead lifting with the right upper extremity. He is restricted to jobs that would not require working on uneven surfaces, kneeling, crouching, or crawling. He is further restricted to jobs that would not involve exposure to hazardous machinery, such as cutters, beaters, or centrifuges. He is limited to low stress work, which in this case is defined as no direct dealing with the public, no production quotas, and no over-the-shoulder supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 24, 1959 and was 44 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-21).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 21).

On appeal, Plaintiff argues that: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating physician; and (2) the ALJ erred in finding that Plaintiff was not credible. (Doc. 7 at 1). The Court will address each issue in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

-4-

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

For his first assignment of error, Plaintiff claims that the ALJ erred in rejecting the opinions of Plaintiff's treating physician. The Court agrees.

The record reflects that:

In March 1999, Dr. Wunder, a physical medicine and rehabilitation specialist, evaluated Plaintiff. (Tr. 152-59). Based on his examination, Dr. Wunder diagnosed Plaintiff with bilateral knee pain secondary to osteoarthritic changes and mild shoulder impingement. (Tr. 154). He concluded that Plaintiff would be able to perform a reduced range of light work. (Tr. 154).

In June 2003, Plaintiff sought emergency room treatment for complaints of back pain. (Tr. 169-74). He was treated and released to return to work, with restrictions of no heavy lifting and no turning or twisting. (Tr. 173).

Records from Samaritan Behavioral Health, dated November 30, 2004 through March 31, 2005, were submitted. Plaintiff was self referred for an assessment for drug and alcohol usage and depression. (Tr. 275, 282-283, 292). His oldest child had died. He heard voices telling him that it was not going to get any better. (Tr. 286). He used

crack twice a month and three joints of cannabis in a year. The diagnosis was cocaine dependence, alcohol dependence, cannabis dependence, and R/O depressive disorder. Plaintiff's GAF was 35.[1] (Tr. 274, 276, 291). He was reported to be motivated. (Tr. 281).

In March 2005, Plaintiff sought emergency room treatment after breaking his right ankle falling down stairs at his home. (Tr. 175). The fracture was reset and put in a splint. (Tr. 177). Notes from Dr. Peters, the treating orthopaedic surgeon, indicated that Plaintiff did well postoperatively. (Tr. 235-38). X-rays showed a satisfactory alignment following the internal fixation. (Tr. 197).

On May 12, 2005, Dr. Jones, a psychologist, evaluated Plaintiff at the state agency's request. Dr. Jones described Plaintiff's affect as sad with limited eye contact. (Tr. 268). Plaintiff reported panic attacks due to worrying about falling. (*Id.*) He was preoccupied with his symptomatology. Plaintiff's intellectual functioning was in the mild range of mental retardation, however, "[t]his is thought to be an underestimate of his general intellectual ability. He indicated that he was chronically worried about bills and medical problems, It is likely these worries negatively impacted his overall intellectual ability." (*Id.*) Additionally, Dr. Jones noted that "Mr. Roberts presents with marginal

---

[1] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF of 31-40 constitutes some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).

information, judgment, and common sense reasoning ability to live independently, to make important decisions concerning his future, and to manage his own funds." (*Id.*) She concluded that Plaintiff had pain disorder with psychological and medical features, depressive disorder, developmental reading disorder, and borderline intellectual functioning, with a GAF of 55.[2] (Tr. 270-71).

In May 2005, Dr. Danopulos performed a consultative physical examination on Plaintiff. (Tr. 198-208). He noted that Plaintiff presented with complaints of low back pain, bilateral knee and ankle pain, and bilateral shoulder pain. (Tr. 198). Dr. Danopulos found that Plaintiff had restricted and painful range of motion in both knees; pain with pressure to his low back; restricted motion, swelling, and atrophy of his right ankle; and normal (but painful) range of motion in his shoulders; but Plaintiff was able to walk with a normal gait and without ambulatory aids. (Tr. 201).

As part of the examination, x-rays were taken of Plaintiff's low back, which showed degenerative changes. (Tr. 208). Based on his examination, Dr. Danopulos found that Plaintiff had "minimal arthritis not being evaluated properly" of the lumbar spine, a history of bilateral knee surgeries, residuals of a right-ankle fracture, and bilateral shoulder pain. (Tr. 202).

Based on a review of Plaintiff's treatment records, as well as Dr. Danopulos's report, Dr. Klyop opined in June 2005 that Plaintiff could perform a reduced range of

---

[2]  A GAF of 51-60 incidates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attackes) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

medium work. (Tr. 210-11). Dr. Klyop based his restrictions on the residuals of Plaintiff's right ankle fracture (which he expected to heal by September 2005) and arthritis in his knees. (Tr. 210). Plaintiff underwent physical therapy for his ankle in June and July 2005 and was discharged with a home exercise program. (Tr. 254-61).

In August 2005, Plaintiff received treatment at Cassano Health Center for knee pain. (Tr. 239-41). X-rays showed calcium deposition arthritis of the knees with medial joint space narrowing of the left knee. (Tr. 242). Plaintiff's doctor referred him for physical therapy, but he was discharged for noncompliance after four visits. (Tr. 244-53). Treatment notes from Dr. Nenonene, Plaintiff's primary care provider, indicated that he treated Plaintiff for bilateral knee pain, right shoulder pain, low back pain, and depression. (Tr. 298-99, 315-328).

In early February 2006, Dr. Nenonene wrote that Plaintiff was currently under his care and was "unemployable and will benefit from any assistance." (Tr. 295). Later in February 2006, MRI studies of both knees showed joint effusion and likely chondromalacia[3] and chondrocalcinosis[4], with other osteoarthritic changes. (Tr. 262-63). Dr. Nenonene noted that Plaintiff's knee pain was due to a meniscus tear. (Tr. 326).

---

[3] Chondromalacia is irritation of the undersurface of the knee cap caused by the knee cap rubbing against one side of the knee joint.

[4] Chondrocalcinosis arises due to the accumulation of crystals of calcium pyrophosphate in the connective tissues which leads to inflammation of several joints in the body.

On November 8, 2006, Plaintiff reported that his two kids had died in the last six months.[5] He complained of fatigue and loss of interest and appetite. (Tr. 320).

Dr. Nenonene completed basic medical forms for the county welfare department after examining Plaintiff in August 2006 and April 2007. (Tr. 264-65, 293-94). He opined that Plaintiff could sit and stand/walk for one hour without interruption and one hour total in an eight-hour day; could frequently lift up to ten pounds; was markedly limited in his ability to push/pull, bend, reach, and handle; but had no significant limitations in performing repetitive foot movements. (Tr. 265, 294). He concluded that Plaintiff would be unemployable for twelve months or longer. (*Id.*) He reported Plaintiff's past knee surgeries and stated that his "[d]epression/anxiety impairs patient to sustain a steady job or any work activity." (Tr. 264).

In October 2007, Dr. Nenonene ordered an MRI of Plaintiff's right shoulder, which showed moderate osteoarthritic changes and a rotator cuff tear. (Tr. 297). He later noted that Plaintiff's shoulder pain was due to this tear. (Tr. 298). Plaintiff underwent a MRI of his right shoulder on October 23, 2007. It demonstrated "a fullthickness tear and retraction of the supraspinatus at the region of the musculotendinous junction... [and a] [s]mall focal tear of the anterior labrum...., and [m]oderate degenerative changes of the acromioclavicular joint." (Tr. 297).

---

[5] Other than limited progress notes from Plaintiff's primary care physician, the Court was unable to find any additional treatment records regarding the psychological effects, if any, of this significant life event.

On March 4, 2008, Dr. Nenonene opined that Plaintiff could not perform even sedentary work activity and that he would be absent more than three times a month. (Tr. 314). Dr. Nenonene based his opinion on Plaintiff's lower back pain, knee pain, radiculopathy, and shoulder pain. (Tr. 311-313). He stated that Plaintiff had a decreased range of motion and "severe joint tenderness [with] activity." (Tr. 313).

On March 15, 2008, Dr. Nenonene stated that the combination of Plaintiff's mental and physical impairments were greater in combination than the sum of the parts. (Tr. 301). "His physical limitations and his chronic pain enables him to carry out most of his activities of daily living as a result, he is dependent on his mother and family for help which has resulted in a depressed mood." (Tr. 302). Dr. Nenonene opined that Plaintiff was markedly restricted in his activities of daily living, social function, and concentration, persistence, and pace. (Tr. 308-309).

At the hearing, Plaintiff testified that at times his knees hurt so badly, because of arthritis, that he had to lie down during the day. (Tr. 351). He also testified that if he moved the wrong way, his knees would swell and that he had to have his mother come over and help with chores. (Tr. 235-352).

Plaintiff's medical records were reviewed by Dr. Newman, who acted as a medical expert. Dr. Newman stated that, based on his review of the record, the claimant was afflicted with a torn rotator cuff of the right shoulder, chondrocalcinosis, chondromalacia, and osteoarthritic changes of both knees, low back pain, secondary to degenerative changes, and the residuals of an open reduction/internal fixation of a right ankle fracture.

He concluded that the claimant would be limited to sedentary work due to his impairments. Dr. Newman relied in part upon Dr. Wunder's opinion, who evaluated Plaintiff in 1999 – long before Plaintiff's onset date of July 20, 2004. (Tr. 154-55, 160-68, 329). Dr. Newman concluded that the severity of the claimant's physical impairments did not meet or medically equal any of the Listings. (Tr. 329-330). The ALJ relied upon this opinion when determining Plaintiff's RFC.[6]

The ALJ ultimately determined that the opinions of Dr. Nenonene, Plaintiff's treating physician, were not supported by objective medical evidence or clinical findings, but rather appeared to be based solely on an uncritical acceptance of Plaintiff's subjective pain complaints. (Tr. 18). However, the ALJ's analysis is flawed based on the record, which includes both objective medical evidence and clinical findings. Moreover, SSR 82-62 states that, "[t]he explanation of the decision must describe the weight attributed the pertinent medical and nonmedical factors in the case and reconcile any significant inconsistencies." SSR 96-6p states that:

> "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanation for the opinions, than are required of treating sources."

---

[6] SSR 96-8p states: Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for five days a week, or an equivalent work schedule.

-11-

The factors involved in weighing medical opinions include: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 CFR § 404.1527(d)(1) states, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Accordingly, the Court finds that the ALJ gave improper weight to the findings of an orthopedic surgeon who simply reviewed the records and appeared to give significant weight to irrelevant medical records from 1999. Other than rejecting the opinion of the treating physician, the ALJ did not give sufficient medical evidence to support his RFC findings. Therefore, the Court finds that this matter should be remanded for a medical examiner to perform an independent examination and assess Plaintiff's orthopedic limitations.

Moreover, there is no evidence that Plaintiff has been assessed by a psychologist since 2005. Plaintiff's treating physician emphasized the fact that in addition to his physical ailments, Plaintiff's depression and anxiety impair his ability to find and sustain work. (Tr. 264). These issues must be properly evaluated. Therefore, the Court finds that this matter should also be remanded for further fact finding in order to obtain a medical expert to assess Plaintiff's psychological limitations.

**B.**

For his second assignment of error, Plaintiff maintains that the ALJ's credibility assessment was insufficient. If the ALJ rejects disability benefits finding that the claimant's testimony is not credible, the ALJ must clearly state the reason for doing so. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

It is within the discretion of the ALJ, who actually meets with and takes testimony from an individual plaintiff, to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky*, 35 F.3d at 1036; *see also McGuire v. Comm'r of Soc. Sec.*, No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility."). The ALJ's credibility finding is entitled to considerable deference. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (ALJ's credibility findings should not be discarded lightly, and absent compelling evidence to the contrary, should be accorded deference).

The Court finds that there are sufficient facts in the record to support the ALJ's credibility finding. Specifically, the ALJ discusses that Plaintiff has received only conservative treatment since his alleged onset of disability. (Tr. 19). Additionally,

despite his allegations of disabling knee pain, Plaintiff was discharged for being noncompliant with his prescribed physical therapy. (Tr. 244). Accordingly, the Court defers to the ALJ's credibility finding.

## III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

## IV.

Based upon the foregoing, the Court concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner to deny Plaintiff SSI and DIB benefits be and is **REVERSED**, and this matter be and is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall have Plaintiff assessed by a psychologist in order to determine whether depression and/or anxiety impair his ability to find and sustain work, and to provide an accurate RFC assessment. Additionally, the Commissioner shall have Plaintiff examined by an orthopedic physician to assess any physical limitations and how they effect the Plaintiff's RFC.

**IT IS SO ORDERED.**

Date: 3/1/11

Timothy S. Black
United States District Judge